**UNITED STATES of America, Plaintiff,**

v.

**Mark Joshua BAILEY, Defendant.**

**No. 96–40063–01–SAC.**

United States District Court,
D. Kansas.

July 14, 1997.

Charles D. Dedmon, David J. Phillips, Office of Federal Public Defender, Topeka, KS, for Defendant.

Mark Joshua Bailey, Topeka, KS, pro se.

James E. Flory, Office of U.S. Atty., Topeka, KS, for Plaintiff.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

On August 28, 1997, the grand jury returned a one count indictment charging Mark Joshua Bailey with one count of possession with intent to distribute cocaine base (crack cocaine) in violation of 21 U.S.C. § 841(a)(1).

This case comes before the court upon the following pretrial motions filed by Bailey (represented by Charles Dedmon):

1. Motion to Suppress Statements (Dk.23); Memorandum of Law in Support of Motion to Suppress Statements (Dk.24).
2. Motion for Production and Discovery (Dk.25).

The government has filed a consolidated response. (Dk.26).

On June 26, 1997, the court held a hearing to consider the defendant's motions. The court, having considered the arguments and briefs of counsel, the evidence presented, and the applicable law, now rules.

**1. Motion to Suppress Statements (Dk.23); Memorandum of Law in Support of Motion to Suppress Statements (Dk.24).**

On January 26, 1996, based upon information supplied by a confidential informant, the Topeka police department obtained a search warrant for the premises and occupants of 1201 S.W. Western, Topeka, Kansas. Upon entry to the residence at 5:38 p.m., officers located Bailey who was the sole occupant of the residence. officers immediately observed U.S. currency and a substance they believed to be cocaine base laying in plain view on the dining room table.

Officer Voigt read the search warrant to Bailey. Bailey was placed under arrest for possession of crack cocaine with the intent to sell. Officers also read Bailey his *Miranda* rights and asked Bailey if he wanted to talk to the police. Bailey indicated that he wanted to talk with the police. Officer Voigt did not believe what Bailey was saying and told him so. According to the government's brief, "Officer Voigt then explained that defendant, due to his prior felony drug conviction, could be facing imprisonment and that if he wanted 'to have any chance of working some of his charges off' that he needed to be truthful with the officers." Bailey then made incriminating statements to officers.

Bailey seeks to suppress his post-arrest statements, arguing that they were the product of coercive government interrogation tactics. Bailey contends that his statements were involuntary based upon his voluntary use of marijuana one-half hour before the officers arrived. Bailey apparently told officers during the post-arrest interview that he had smoked a joint one-half hour before their arrival. Bailey also claims that he "consumed a forty ounce bottle of Old English alcohol prior to the arrival of the officers." In short, the defendant contends that the government cannot carry its burden of demonstrating that his post-arrest statements were voluntary.

The government responds, indicating that under the totality of the circumstances it is clear that Bailey's post-arrest statements were the product of his voluntary, intelligent waiver of his right to remain silent. The government indicates that Bailey's use of marijuana does not render his statements involuntary, and that nothing in the manner in which he was interrogated was improper.

### Legal Standards

If a defendant talks to police after being advised of his right to remain silent, the government bears the burden of proving by a preponderance of the evidence that the waiver of the right was voluntary. *Colorado v. Connelly*, 479 U.S. 157, 168, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986). An express statement of waiver by the

defendant is not required; instead, waiver can be inferred from the defendant's actions and words. *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979). To establish a voluntary waiver of Fifth Amendment rights, the government must show (1) that the waiver was the product of free and deliberate choice rather than intimidation, coercion, or deception; and (2) that the waiver was made in full awareness of the nature of the right being waived and the consequences of waiving. *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1140–41, 89 L.Ed.2d 410 (1986). Only if the totality of the circumstances surrounding the interrogation shows both an uncoerced choice and the requisite level of comprehension can a waiver be effective. *Id.; United States v. Hernandez*, 93 F.3d 1493, 1501 (10th Cir.1996). To evaluate whether a statement or confession was coerced, we consider the characteristics of the defendant, the circumstances surrounding the statements, and the tactics employed by the police. *United States v. Guerro*, 983 F.2d 1001, 1004 (10th Cir. 1993); *see United States v. Short*, 947 F.2d 1445, 1449 (10th Cir.1991) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973)), *cert. denied*, 503 U.S. 989, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992).

*United States v. Toro–Pelaez*, 107 F.3d 819, 825 (10th Cir.1997).

Incriminating statements obtained by government acts, threats, or promises that permit the defendant's will to be overborne run afoul of the Fifth Amendment and are inadmissible at trial as evidence of guilt. *Malloy v. Hogan*, 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964). In determining whether a particular confession is coerced, we consider the following factors: (1) the age, intelligence, and education of the defendant; (2) the length of the detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of her constitutional rights; and (5) whether the defendant was subjected to physical punishment. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); *see Colorado v. Connelly*, 479 U.S. 157, 164, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986) (A defendant's mental condition does not by itself determine the issue of voluntariness). The determination of voluntariness is based on the totality-of-the-circumstances; none of the single factors listed above is determinative. *Id.* Accordingly, this court must be mindful of all of the circumstances surrounding a defendant's interrogation, including the particular defendant's characteristics. *See id.*

*United States v. Glover*, 104 F.3d 1570, 1579 (10th Cir.1997).

### Voluntary Intoxication or Narcotics Use

■ Intoxication does not singularly or automatically render a confession involuntary. *U.S. v. Muniz*, 1 F.3d 1018, 1022 (10th Cir.), *cert denied*, 510 U.S. 1002, 114 S.Ct. 575, 126 L.Ed.2d 474 (1993); *U.S. v. Chrismon*, 965 F.2d 1465, 1469 (7th Cir.1992); *U.S. v. Casal*, 915 F.2d at 1229; *U.S. v. Newman*, 889 F.2d 88, 94–95 (6th Cir.1989), *cert. denied*, 495 U.S. 959, 110 S.Ct. 2566, 109 L.Ed.2d 748 (1990). The Supreme Court in *Connelly* held that "coercive police activity is a necessary predicate" to finding a confession involuntary. 479 U.S. at 167, 107 S.Ct. at 522. "[W]hile mental condition is surely relevant to an individual's susceptibility to police coercion," the police must still overreach and exploit the known and existing condition. *Connelly*, 479 U.S. at 165, 107 S.Ct. at 521; *see U.S. v. Guerro*, 983 F.2d at 1004. Consequently, when it appears the interrogators knew or reasonably should have known that the defendant was under the influence of intoxicants, a confession may be involuntary under "a lesser quantum of coercion." *U.S. v. Haddon*, 927 F.2d 942, 946 (7th Cir.1991).

### Analysis

■ Officer Voigt testified at the evidentiary hearing, essentially recounting the same facts proffered by the government in its brief. Several gun-bearing officers screaming "police, search warrant" entered the back door of the residence with a battering ram. Officers fanned out through the residence to secure it. As officers entered the residence, Bailey initially fled into another room but then acquiesced in the officers'

orders to stop. Bailey was placed in handcuffs while officers checked the rest of the residence. Upon entry ·to the residence, a bag of what appeared to the officers to be crack cocaine lay in plain view. Officer Voigt read Bailey the search warrant and explained that Bailey was under arrest for possession of crack cocaine with the intent to sell and other related violations. Officer Voigt read Bailey the *Miranda* warnings from a card. After receiving the *Miranda* warnings, Bailey indicated that he was willing to talk with Officer Voigt.

During the initial phase of the interview of Bailey, Officer Voigt did not believe what he was being told. Officer Voigt then informed the defendant that if there was any possibility or chance of working some of the charges off, he better start telling the truth.[1] Officer Voigt indicated that a person with Bailey's criminal record would be facing imprisonment.[2] At that point Bailey proceeded to explain in substantial detail where he had obtained the drugs and the plans for their future distribution.

Although officers believed they smelled marijuana and did find a partially consumed bottle of Old Charter whiskey, Officer Voigt did not believe that Bailey's mental processes were noticeably impaired. Bailey's answers to questions were responsive. Nothing in Bailey's demeanor indicated to Officer Voigt that Bailey was operating under a diminished capacity.

In stark contrast to Officer Voigt's testimony stands Bailey's own version of the raid. Bailey testified that he was scared and frightened by the screaming and yelling officers who brandished "automatic" weapons. Bailey indicated that he had consumed a substantial amount of Old Charter and had smoked some marijuana prior to the execution of the search warrant. Bailey testified that officers affirmatively mislead him into making any statements that he made. In

regard to the confession he purportedly told to Officer Voigt, Bailey testified that the officers had simply concocted all of the information regarding his supplier as he had told them nothing incriminating.

Office Voigt's testimony is irreconcilable with Bailey's version of the raid and the events that followed. Someone is not recounting the facts in a complete and accurate manner as they would have been objectively observed. Bailey's version of the raid and subsequent events is of dubious quality. The court finds the testimony of Officer Voigt substantially more credible than the testimony of Bailey. Bailey's improbable account of the events following the raid is perhaps best viewed as a poorly spun tale in the slim hope of both suppression of the evidence or acquittal at trial.

▮ Nothing in Officer Voigt's actions rendered Bailey's confession involuntary. Based upon the apparent facts, Officer Voigt's assessment of the veracity of Bailey's "story" was reasonable. Merely exhorting Bailey to start telling the truth did not render his confession involuntary. *See United States v. Chalan,* 812 F.2d 1302, 1307 (10th Cir.1987) (defendant's confession was voluntary despite law enforcement officer's exhortations to tell the truth); *United States v. Morgan,* 911 F.Supp. 1340, 1350 (D.Kan. 1995) (mere exhortations by law enforcement officers to tell the truth are not sufficient to render a defendant's statements involuntary). Officer Voigt simply stated the obvious—the police could not work with a person who could not tell the truth on the most fundamental points and that such a person would not be a candidate for confidential informant work. Informing Bailey that his only chance to cooperate with the police would be to make truthful statements did not render his confession involuntary. *Cf. Glover,* 104 F.3d at 1582 ("A promise to bring any cooperation

---

1. Officer Voigt testified that unless he believed Bailey was making a truthful proffer of the facts, there was no chance for Bailey to work with the police in a confidential informant role.

2. During his post-arrest interview of Bailey, officer Voigt may have inadvertently misstated one aspect of Bailey's criminal record. However, Bailey does have a prior state felony narcotics

distribution offense. *See* "Information of Previous Conviction (Pursuant to Title 21, United States Code, Section 851)" (Dk. 29). In light of the fact that Bailey was in the best position to know his own criminal history, even if Officer Voigt mistakenly recounted one minor aspect of Bailey's criminal record, that inadvertent error did not, under the totality of the circumstances, render Bailey's confession involuntary.

on the part of the defendant to the [court's] ... attention does not constitute a coercive promise sufficient to render any subsequent statements involuntary and inadmissible.") (quoting *United States v. Baldacchino*, 762 F.2d 170, 179 (1st Cir.1985)).

In short, Bailey's statements were not the product of the coercive tactics or promises of law enforcement officers. *See United States v. Lewis*, 24 F.3d 79, 82 (10th Cir.), *cert. denied* 513 U.S. 905, 115 S.Ct. 271, 130 L.Ed.2d 189 (1994). Under the totality of the circumstances, Bailey's statements were voluntary. The defendant's motion to suppress his statements is denied.

**2. Motion for Production and Discovery (Dk.25).**

Without complying the requirements of this court's *Criminal Procedural Guidelines*, Bailey has filed a laundry list of discovery requests. In addition to noting that the defendant did not comply with this court's *Guidelines*, the government indicates that this is a "full discovery" case and requests that this motion be summarily denied.

All counsel are expected to abide by this court's *Guidelines*. Those *Guidelines* are intended to further justice by eliminating a needless motion practice that taxes the court's limited resources. Mr. Dedmon practices regularly before this court and is well aware of this court's expectations in regard to criminal discovery motions. Until this discovery motion, Dedmon has been a model of compliance with the expectations of the court. During oral argument, Dedmon indicated that he filed this motion to put the government on notice of its *Brady*, obligations in regard to information that might serve as a basis of a motion to suppress premised upon the omission of facts or information regarding the confidential informant (or presumably other information) from the affidavit submitted in application for the search warrant. In response, the government acknowledged the defendant's request and indicated that it would fulfill its statutory and constitutional obligations regarding discovery.

In light of the government's response, the court denies the defendant's motion as moot.

IT IS THEREFORE ORDERED that the defendant's "Motion to Suppress Statements" (Dk.23) is denied.

IT IS FURTHER ORDERED that the defendant's "Motion for Production and Discovery" (Dk.25) is denied as moot.