UNITED STATES of America, Plaintiff,

v.

**Mark Joshua BAILEY, Defendant.**

No. 96–40063–01–SAC.

United States District Court,
D. Kansas.

Aug. 29, 1997.

Charles D. Dedman, David J. Phillips, Office of Federal Public Defender, Topeka, KS, for Mark Joshua Bailey.

Mark Joshua Bailey, Topeka, KS, pro se.

James E. Flory, Office of the U.S. Atty., Topeka, KS, for U.S.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

On August 28, 1997, the grand jury returned a one count indictment charging Mark Joshua Bailey with one count of possession with intent to distribute cocaine base (crack cocaine) in violation of 21 U.S.C. § 841(a)(1). That charge is alleged to have occurred on or about January 26, 1996, and is the result of an execution of a search warrant for the premises and occupants of 1201 S.W. Western, Topeka, Kansas. On June 26, 1997, the court held a hearing to consider the defendant's motion to suppress and the defendant's motion for production and discovery.

Those motions were taken under advisement. On July 3, 1997, the grand jury returned a superseding indictment. The superseding indictment contains one additional § 841(a)(1) charge. That narcotics offense is alleged to have occurred on or about November 1, 1995, approximately three months before the crime charged in Count I of the original indictment is alleged to have occurred. On July 14, 1997, this court entered an eleven page memorandum and order denying the defendant's motion to suppress (Dk.23) and denied as moot the defendant's motion for production and discovery (Dk.25). *See United States v. Bailey*, 979 F.Supp. 1315 (D.Kan.1997).

Since the superseding indictment was filed, Bailey has filed these additional pretrial motions:

1. Motion to Suppress (Dk.46); Memorandum of Law in Support of Motion to suppress (Dk.48).
2. Motion to Sever Counts (Dk.47); Memorandum of Law in Support of Motion to Sever Counts (Dk.49).
3. Motion for Continuance (Dk.51).

The government has filed a consolidated response opposing the defendant's motion to suppress and motion to sever. *See* (Dk.52). The government has not filed a written response to the defendant's motion for continuance.

On August 28, 1997, the court conducted a hearing to consider the defendant's motions. At the conclusion of the hearing, the court took the matter under advisement. This order constitutes the court's findings of fact and conclusions of law.

## 1. Motion to Suppress (Dk.46).

Bailey seeks "to suppress certain evidence obtained by the police in derogation of [his] Fourth and Fifth Amendment rights as guaranteed by the United States Constitution." Specifically, Bailey seeks to suppress from evidence crack cocaine confiscated by officers shortly before his arrest on November 1 1995, and any statements he made to police in response to their unlawful "search and seizure."

The government opposes the defendant's motion. Based upon its version of the facts, the government contends that Bailey has no standing to challenge the seizure of the narcotics as he had abandoned any interest in the drugs as evidenced by his own actions and statements. Consequently, the government contends that suppression would be inappropriate. In the alternative, the government contends that there was ample evidence warranting a *Terry* stop and that the totality of circumstances clearly justified such a brief investigatory stop. In regard to Bailey's oral statements, the government contends that those statements were not the product of custodial interrogation, but instead were made spontaneously by Bailey in reaction to Officer Hill's act of walking back to the area where he had seen Bailey stoop over and place something on the ground.

### Findings of Fact

On the evening of November 1, 1995, around 11:00 p.m. Officers Hill and Chapman of the Topeka, Kansas, police department were on routine patrol. Based upon anonymous complaints that 1277 Western was the location of a possible drug house and upon anonymous information that drug sales were being conducted in the alley behind residence, the officers patrolled the area to observe what, if any, suspicious activity in the area. While driving on Huntoon street, the officers observed two or three black male individuals in the alley near the rear of 1277 Western. The officers drove down the alley for a closer inspection. As the officers approached in their patrol car, Bailey began walking in an easterly direction while the other person, later identified as a man named "Ronnie Fuller" went in another direction. Based upon his prior experience, Officer Hill knew Bailey as a person involved in narcotics trafficking.

Officer Chapman made contact with Fuller. Officer Hill walked in the direction that he had seen Bailey walk and was able to observe him from the shadows. Prior to confronting the defendant, Officer Hill observed Bailey take his right hand out of his pocket, bend over and appear to place something on the ground. Bailey then apparently turned and began heading back in the direction of the patrol car. At that point Officer Hill emerged from the shadows and made contact with Bailey. Officer Hill indicated

that he wanted to talk to Bailey about possible illegal activity taking place in the area. Based upon his fear that Bailey might be carrying a weapon, Officer Hill conducted a *Terry* pat-down.

Once Officer Hill and Bailey had arrived at the area of the patrol car, Officer Hill headed back to make a closer inspection of the area where he had observed the defendant bend over and place something on the ground. As Officer Hill walked toward the area, Bailey made the following unsolicited comment: "If you find anything on the ground in that area, it's not mine" or something to that effect. In response to Bailey's comment, Officer Chapman asked Bailey "if people frequently threw items on the ground in that area." Bailey responded "no" and reiterated that anything found in that area was not his.

Officer Hill's scan of the area located a plastic bag containing what he believed to be crack cocaine in the spot he had seen Bailey bend over. Bailey was placed under arrest. Officer Hill noted that the plastic bag was dry notwithstanding the fact that it had been drizzling that night and that the ground in that area was damp.

### Fourth Amendment

■ "The Fourth Amendment protects citizens from unreasonable searches and seizures by government actors." *United States v. Smythe*, 84 F.3d 1240, 1242 (10th Cir.1996) (citing *Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921)). The protection from unreasonable searches and seizures afforded by the Fourth Amendment reaches only places and interests in which the defendant has a reasonable expectation of privacy. *Rakas v. Illinois*, 439 U.S. 128, 140–45, 99 S.Ct. 421, 428–31, 58 L.Ed.2d 387 (1978). The defendant must prove that he has a subjective expectation of privacy and that his expectation is objectively reasonable under the circumstances. *United States v. Singleton*, 987 F.2d 1444, 1447–50 (9th Cir.1993). "[T]he demonstration of a legitimate expectation of privacy 'is a threshold standing requirement, and analysis cannot proceed further without its establishment.'" *Id.* at 1449 (quoting *United States v. Cruz Jimenez*, 894 F.2d 1, 5 (1st Cir.1990)).

### Burden of Proof

In *United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir.1994), the Tenth Circuit recently said that a defendant has the "burden of proving whether and when the Fourth Amendment was implicated" at the point the defendant or the evidence was seized. More specifically, the defendant must prove that he has standing to challenge the search as well as a prima facie case of a Fourth Amendment violation. *Id.* at 1496 n. 1; *see United States v. Poulsen*, 41 F.3d 1330, 1335 (9th Cir.1994) (the defendant has the burden of establishing her standing to assert a Fourth Amendment violation). "The government then bears the burden of proving that its warrantless actions were justified" under the facts and law. *Carhee*, 27 F.3d at 1496.

### Abandoned Property

■ A warrantless search and seizure of abandoned property is not unreasonable under the Fourth Amendment. *United States v. Trimble*, 986 F.2d 394, 399 (10th Cir.), *cert. denied*, 508 U.S. 965, 113 S.Ct. 2943, 124 L.Ed.2d 691 (1993). In *United States v. Hernandez*, 7 F.3d 944 (10th Cir.1993) the Tenth Circuit made these observations regarding the concept of "abandonment:"

> The test for abandonment is whether an individual has retained any reasonable expectation of privacy in the object. This determination is made by objective standards. An expectation of privacy is a question of intent which may be inferred from words, acts, and other objective facts. The abandonment must be voluntary. For example, an abandonment is not voluntary when it results in a Fourth Amendment violation. However, police pursuit or investigation at the time of abandonment of property, without more, does not of itself render abandonment involuntary.

*Id.* at 947 (internal citations omitted). *See United States v. Robinson*, 73 F.3d 371 (9th Cir.1995) (Table; available on Westlaw at 1995 WL 759455) ("There is no nexus between an unlawful detention and an abandonment if the abandonment precedes the detention."), *cert denied*, —— U.S. ——, 116 S.Ct. 1451, 134 L.Ed.2d 570 (1996).

### Police Citizen Encounters

According to the Supreme Court, there are three types of police-citizen encounters:

(1) consensual encounters which do not implicate the Fourth Amendment, *see, e.g., Michigan v. Chesternut,* 486 U.S. 567, 574–76, 108 S.Ct. 1975, 1979–81, 100 L.Ed.2d 565 (1988); *INS v. Delgado,* 466 U.S. 210, 218–21, 104 S.Ct. 1758, 1763–65, 80 L.Ed.2d 247 (1984);

(2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity, *see, e.g ., United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989); *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968); and

(3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause.

*United States v. Davis,* 94 F.3d 1465, 1467–68 (10th Cir.1996).

### Terry

In *Terry* the Supreme Court concluded that to justify "the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences drawn from those facts, reasonably warrant that intrusion." *Terry,* 392 U.S. at 21, 88 S.Ct. 1868. "The Court cautioned, however, a police officer was not entitled to rely on 'his inchoate and unparticularized suspicion or "hunch." ' " *United States v. Lang,* 81 F.3d 955, 964 (10th Cir.1996) (quoting *Terry* at 27, 88 S.Ct. at 1883). A *Terry* stop is evaluated under a two-part analytical framework. First, the court must ask whether the stop was justified at its inception. Second, the court's inquiry focuses on whether the stop was reasonably related in scope to the circumstances which justified the interference in the first place. *United States v. Gregory,* 79 F.3d 973, 977 (10th Cir.1996).

"The conduct of the officers is judged by an objective standard taking the totality of the circumstances and information available to the officers into account." *Lang,* 81 F.3d at 964 (*citing Terry* at 21–22, 88 S.Ct. at 1879–80).

It is well settled that an investigative stop is justified where police officers have "a reasonable, articulable suspicion that the detainee has been, is, or is about to be engaged in criminal activity." *United States v. Nicholson,* 983 F.2d 983, 987 (10th Cir.[1993] ) (citing *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889). The presence of reasonable suspicion is not determined by any one factor, but by the totality of the circumstances *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301. Tips, even if anonymous, coupled with independent police work, provide reasonable suspicion to warrant an investigative stop. *Id.* at 329–31, 110 S.Ct. at 2415–17.

*United States v. Elkins,* 70 F.3d 81, 83 (10th Cir.1995).

### Miranda

In *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." "[T]wo requirements must be met before *Miranda* is applicable; the suspect must be in 'custody,' and the questioning must meet the legal definition of 'interrogation.' " *United States v. Ritchie,* 35 F.3d 1477, 1484 (10th Cir.1994) (quoting *United States v. Perdue,* 8 F.3d 1455, 1463 (10th Cir.1993)).

### Interrogation

For purposes of *Miranda,* interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980).

### Custody

"A person is 'in custody' for the purposes of *Miranda* if he 'has been deprived of his freedom of action in any signifi-

cant way,' *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612, or his freedom of action has been curtailed to a 'degree associated with a formal arrest,' *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983)(per curiam)." *Ritchie*, 35 F.3d at 1477. "A person has been taken into police custody whenever he 'has been deprived of his freedom of action in any significant way.'" *Perdue*, 8 F.3d at 1463 (*quoting Miranda*, 384 U.S. at 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966)). "The only relevant inquiry is 'how a reasonable man in the suspect's position would have understood his situation.'" *United States v. Robertson*, 19 F.3d 1318, 1321 (10th Cir.1994) (*quoting Perdue*, 8 F.3d at 1463) (*quoting Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984)), *cert. denied*, 513 U.S. 906, 115 S.Ct. 271, 130 L.Ed.2d 189 (1994). In deciding this issue, the court may consider whether agents restrained the defendant's liberty by means of physical force or show of authority. *See United States v. Pena*, 920 F.2d 1509, 1515 (10th Cir.1990), *cert. denied*, 501 U.S. 1207, 111 S.Ct. 2802, 115 L.Ed.2d 975 (1991). In *Ritchie*, the Tenth Circuit commented:

> There are some instances where police detention and questioning of criminal suspects do not amount to custodial interrogation requiring *Miranda* warnings. Traditionally *Miranda* warnings are not required in stops pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), because "the typical police-citizen encounter envisioned by the Court in *Terry* usually involves no more than a very brief detention without the aid of weapons or handcuffs." *Perdue*, 8 F.3d at 1464. However, where the police find it necessary to employ an amount of force in a *Terry* stop that is beyond the ordinary, they can create "the 'custodial' situation envisioned by *Miranda* and its progeny." *Id.* We thus clarified in *Perdue* that *Miranda* warnings may be required before a suspect is actually arrested. *Id.*

35 F.3d at 1485.

### Analysis

■ Based upon the facts presented, it is clear that Bailey had no legitimate expecta-tion of privacy in the crack cocaine that Officer Hill found in the alleyway. Bailey disavowed ownership of any item in the alley. When recovered by Officer Hill, the crack cocaine was simply laying on the ground. At the point in time the crack was found, Bailey retained no legitimate expectation of privacy in it. Consequently, Bailey's motion to suppress the physical evidence seized runs aground at this point.

Contrary to the defendant's argument, there is no evidence suggesting that his decision to place the drugs on the ground was the product of an illegal seizure. Officer Hill testified that Bailey placed the item on the ground prior to the time that he actually made any contact with Bailey. Officer Hill testified that Bailey appeared "surprised" when he emerged from the shadows—as if the defendant was unaware of his presence. Consequently, Bailey's act of "abandonment" was not even precipitated by any act by the police. In any event, even if Bailey thought that he was being pursued by the police while he walked in the alley, that belief would not render his abandonment involuntary. *See United States v. Boone*, 62 F.3d 323, 326 (10th Cir.) (police pursuit alone is not enough to render an abandonment involuntary), *cert. denied*, —— U.S. ——, 116 S.Ct. 576, 133 L.Ed.2d 499 (1995); *Hernandez*, 7 F.3d at 947.

■ Bailey's motion to suppress his own voluntary statements enjoys no greater success. At the time Bailey made any of the incriminating statements he was not under arrest but was at most only subject to a valid *Terry* stop. Officers exercised no physical force or display of weapons during the stop. Consequently, the court finds that Bailey was not in custody for purposes of *Miranda*.

■ In any event, even if Bailey was "in custody," the fourth amendment would not require the suppression of his own voluntary, spontaneous and unsolicited comments. "If a person voluntarily speaks without interrogation by an officer, the Fifth Amendment's protection is not at issue, and the statements are admissible." *United States v. Muniz*, 1 F.3d 1018, 1022 (10th Cir.1993), *cert denied*, 510 U.S. 1002, 114 S.Ct. 575, 126 L.Ed.2d 474 (1993). *See Miranda*, 384 U.S. at 478, 86

S.Ct. at 1630 ("Volunteered statements of any kind are not barred by the Fifth Amendment."); *see Innis,* 446 U.S. at 300–02, 100 S.Ct. at 1689–90. The court finds that Bailey's initial statement denying ownership of anything in the alley was unsolicited and spontaneous. Officer Hill's act of walking down the alley can hardly be characterized as "interrogation." Other than Bailey's "no" response to Officer Chapman's question regarding the prevalence of persons abandoning property in the area, Bailey simply reconfirmed his prior spontaneous remark. Officer Chapman's somewhat rhetorical question was not one reasonably likely to elicit an incriminating response.

In sum, no statement made by Bailey in the presence of law enforcement officers on November 1, 1995, was the product of police interrogation. Because the defendant voluntarily abandoned the crack cocaine in the alley, he retained no reasonable expectation of privacy in the object. The defendant's motion to suppress is denied.

### 2. Motion to Sever Counts (Dk.47).

Bailey contends that counts one and two are improperly joined under Fed.R.Crim.P. 8(a). Bailey contends that the alleged criminal acts are temporally separated and different in nature. Because there is no evidence that these crimes are part of a common scheme, Bailey seeks severance under Rule 8(a). In the alternative, Bailey contends that the court should grant a severance of the two counts under the discretion afforded by Fed. R.Crim.P. 14. Bailey contends that the joinder of the two counts will confound his presentation of separate defenses. Bailey indicates that he intends to testify at trial in regard to count one. Bailey contends that joinder of count two will deprive him of a fair trial as his purported confession to count one [1] will enhance the possibility of his conviction in the second count—a case built primarily on circumstantial evidence.

The government opposes the defendant's motion, arguing that the counts are properly joined and that the defendant has not made a sufficient showing that he will be prejudiced by their joinder. The government contends that if the defendant's arguments are accepted, virtually every defendant in a Multi-count indictment would be entitled to a separate trial on every count in every case. The government notes that the Tenth Circuit has repeatedly rejected similar arguments in many other cases, including cases charging multiple counts of narcotics trafficking.

### Legal Standards

The Tenth Circuit recently discussed the issue of proper joinder under Rules 8 and 14:

A question of misjoinder under rule 8 is a question of law, subject to de novo review. (*United States v. Hollis,* 971 F.2d 1441, 1456 (10th Cir.1992), *cert. denied,* 507 U.S. 985, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993)); (*United States v. Cardall,* 885 F.2d 656, 667 (10th Cir.1989)). According to Rule 8(a) joinder of offenses is proper if the offenses are "of the same or similar character." *United States v. Holland,* 10 F.3d 696, 699 (10th Cir.1993), *cert. denied sub nom. Kelly v. United States,* 510 U.S. 1064, 114 S.Ct. 739, 126 L.Ed.2d 702 (1994); *United States v. Sturmoski,* 971 F.2d 452, 460 (10th Cir.1992). And we have previously stated that Rule 8 "is construed broadly to allow liberal joinder to enhance the efficiency of the judicial system." *United States v. Hopkinson,* 631 F.2d 665, 668 (10th Cir.1980), *cert. denied,* 450 U.S. 969, 101 S.Ct. 1489, 67 L.Ed.2d 620 (1981); (citations omitted). In the present case, Count 161, knowingly engaging in the manufacture of marijuana plants is a drug offense in violation of the Drug Abuse Prevention and Control Act of Title 21. Counts 2 and 3, knowingly and intentionally selling and offering for sale drug paraphernalia, are also drug offenses in violation of the same comprehensive act. We conclude, therefore, that the joinder of Count 161 was proper under Rule 8(a) because it was an offense of the "same or similar character." *Cf United States v. Fortenberry,* 919 F.2d 923, 925 (5th Cir. 1990) (concluding that because both charges were for weapons violations they

---

1. *See United States v. Bailey,* 979 F.Supp. at 1316 (recounting in part Bailey's purported confession).

were of the same or similar character within the meaning of the rule governing joinder of claims), *cert. denied,* 499 U.S. 930, 111 S.Ct. 1333, 113 L.Ed.2d 265 (1991).

However, even in the absence of a misjoinder under Rule 8(a), the court may order the separate trials of counts " 'if it appears that a defendant ... is prejudiced by a joinder of offenses.' " *United States v. Levine,* 983 F.2d 165, 167 (10th Cir.1992) (*quoting* Fed.R.Crim.P. 14). "In deciding on a motion for severance, the district court has a duty to weigh the prejudice resulting from a single trial of counts against the expense and inconvenience of separate trials." *Hollis,* 971 F.2d at 1456; *Cardall,* 885 F.2d at 668. "The decision whether to grant or deny ·severance is within the sound discretion of the trial court, and will not be disturbed on appeal unless there is an affirmative showing of an abuse of discretion." *Id.* at 667.

*United States v. Janus Industries,* 48 F.3d 1548, 1557 (10th Cir.), *cert denied,* —— U.S. ——, 116 S.Ct. 87, 133 L.Ed.2d 44 (1995).

### Burden of Proof

"The defendant bears a heavy burden of showing real prejudice from the joinder of the two counts." *United States v. Holland,* 10 F.3d 696, 699 (10th Cir.1993), *cert. denied,* 510 U.S. 1064, 114 S.Ct. 739, 126 L.Ed.2d 702 (1994), *quoting, United States v. Muniz,* 1 F.3d 1018, 1023 (10th Cir.), *cert. denied,* 510 U.S. 1002, 114 S.Ct. 575, 126 L.Ed.2d 474 (1993). In establishing real prejudice, the defendant must "demonstrate that the alleged prejudice he suffered outweighed the expense and inconvenience of separate trials." *United States v. Parra,* 2 F.3d 1058, 1063 (10th Cir.1993), *cert. denied,* 510 U.S. 1026, 114 S.Ct. 639, 126 L.Ed.2d 597 (1993).

*United States v. Martin,* 18 F.3d 1515, 1518 (10th Cir.), *cert denied,*

### Analysis

■ The court denies the defendant's motion for severance. The defendant has not demonstrated that severance is either necessary or appropriate in this case. The court is satisfied that the counts are sufficiently similar in character to permit joinder under Rule 8. *See Janus Industries,* 48 F.3d at

1557 (crimes arising under the Drug Abuse Prevent and Control Act of Title 21 properly joined under Rule 8(a)). Although separated by approximately three months in time, the courts have routinely denied requests for severance in similar instances.

■ Nor is the court convinced that severance is appropriate under Rule 14. " 'Neither a mere allegation that defendant would have a better chance of acquittal in a separate trial, nor a complaint of the "spillover effect" ... is sufficient to warrant severance.' " *Janus Industries,* 48 F.3d at 1557 (*quoting Levine,* 983 F.2d at 167) (*quoting United States v.. Bailey,* 952 F.2d 363, 365 (10th Cir.1991)) (alteration in original). In short the defendant has not demonstrated that he will·be prejudiced by the joinder of the two counts.

■ As to Bailey's contention that he wishes to testify as to count 1 and but perhaps remain silent as to count 2, the court is not satisfied that the defendant has made a sufficient showing under the criteria adopted by the Tenth Circuit. A similar issue was addressed in *Martin:*

[The defendant's] contention that he was prejudiced because he wished to remain silent on one count but testify and mount a defense on another count, was addressed in *United States v. Cox,* 934 F.2d 1114, 1119–20 (10th Cir.1991):

Defendant alternatively argues that he was prejudiced because he wished to remain silent on counts one and two (the marijuana offenses), but, testify and mount an entrapment defense on counts five through eight (the other drug offenses). When the district court refused to sever these offenses, defendant was forced either to testify or to remain silent on both counts.

In *Valentine,* 706 F.2d at 291, [*United States v. Valentine,* 706 F.2d 282 (10th Cir.1983) ] we discussed what a defendant who wishes to remain silent on some counts and· testify on other counts must do before he is entitled to a severance under rule 14:

"[N]o need for a severance exists until the defendant makes a convincing show-

ing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony that he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it to intelligently weigh the considerations of economy and expedition in judicial administration' against the defendant's interest in having a free choice with respect to testifying."

18 F.3d at 1518–1519. Under this standard, Bailey has not made a convincing showing that severance under Rule 14 is appropriate.

The defendant's motion for severance of counts 1 and 2 are denied.

### 3. Motion for Continuance (Dk.51).

On August 22, 1997, Bailey filed a motion for continuance based upon the fact that his attorney has other commitments which conflict with the current trial setting of September 9, 1997. The defendant suggests that the additional time be excluded under 18 U.S.C. § 3161(h)(8). The government does not oppose the defendant's motion. By separate order, the court grants the defendant's motion for a continuance, finding that the ends of justice served by granting this continuance outweigh the best interest of the public and the defendant in a speedy trial. See § 3161(h)(8).

IT IS THEREFORE ORDERED that Bailey's Motion to Suppress (Dk.46) and his Motion to Sever Counts (Dk.47) are denied.