UNITED STATES of America,
Plaintiff–Appellee,

v.

David Finn PEARCE, Defendant–
Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Stacey Lee PEARCE, a/k/a Stacy Lee
Allen, a/k/a Stacey Lee Ray,
Defendant–Appellant.

Nos. 94–5673, 94–5688.

United States Court of Appeals,
Fourth Circuit.

Argued May 1, 1995.

Decided Sept. 18, 1995.

**ARGUED:** Thomas Norman Cochran, Assistant Federal Public Defender, Greensboro, NC, for appellant David Pearce; David Bruce Freedman, White & Crumpler, Winston–Salem, NC, for appellant Stacey Pearce. Robert Michael Hamilton, Assistant United States Attorney, Greensboro, NC, for appellee. **ON BRIEF:** Walter C. Holton, Jr., United States Attorney, Shannon Joseph, Third Year Law Student, Wake Forest School of Law, Greensboro, NC, for appellee.

Before ERVIN, Chief Judge,
MURNAGHAN, Circuit Judge, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.

Affirmed by published opinion. Chief Judge ERVIN wrote the opinion, in which Judge MURNAGHAN and Senior Judge YOUNG joined.

## OPINION

ERVIN, Chief Judge:

David and Stacey Pearce were found guilty under 18 U.S.C. § 1028(a)(5) for knowingly possessing document-making implements, with the intent that the implements be used in the production of false identification documents. Both defendants claim that there was insufficient evidence to convict them and that the district court's supplemental jury instruction with respect to an element of the crime was erroneous. They also challenge the district court's enhancement of their sentences for more than minimal planning under the Sentencing Guidelines. Finding no error, we affirm both their convictions and sentences.

### I.

On March 3, 1994, Secret Service Agent Glenn Millan arrived at 1529A Hickory Street in Rockingham, North Carolina, the residence of David Pearce. David gave the agent verbal and written consent to search both the residence and a rental car parked outside the house. David had rented the car in Rockingham earlier that month and had listed 1529A Hickory Street as his residence. The rental agreement was in his name, and Stacey Pearce was listed as the person to contact in case of an emergency. Stacey's address was listed as "SAB", suggesting that her address was the same as David's.

The agent searched the car first. In it he found a road atlas with a clear plastic bag inside which included the following items: a large eraser, a roll of clear tape, a pair of scissors, a pencil, lined laminating paper, and two packages of rub-on letters. The government's fingerprint expert testified that Stacey's fingerprints were found on one of the packages of rub-on letters.

The agent also searched the residence, a two-bedroom mobile home. In one dresser drawer, he found a box of laminating pouches used to make identifications. The box was manufactured in Mexico. There was also a letter addressed to David. In the same dresser, the agent found another box of laminating pouches and a piece of women's clothing. Men and women's clothes were in the bedroom closet, as well as boxes containing photographs of family and friends. On the floor beside the dresser, the agent found a working laminating machine made in Korea. Two clipboards and a black vinyl zip-up notebook, containing a brown envelope with rub-on letters, were next to the laminating machine. There were also several other packages of rub-on letters, laminating paper, and tape attached to the clipboards and notebook. Stacey's fingerprints were found on one of these rub-on letter packages. A pair of scissors, a black ink pad, a large eraser, a ruler, and a pen were lying on the floor next to the dresser and laminating machine.

Additionally, the agent found a black briefcase in the bedroom closet with many incriminating items. There were several Polaroid photographs of the defendants posing in front of different colored back drops. The briefcase also contained the following documents: a blank New Jersey driver's license; a blank Louisville Automobile Club identification card; a Tennessee license with no name, but a description of a white male and a date of birth; a Tennessee license in the name of Henry Bacharech with a license number, but with the photograph cut out and missing; two blank New Jersey licenses with the same license number; and two blank

Tennessee driver's licenses, with the same license number. A government expert in document analysis testified that the Tennessee licenses were counterfeit and that rub-on letters may have been used to produce the blank licenses. The agent also found five Connecticut operators licenses, a blank Connecticut identification with no information on it, and two blank Connecticut operators licenses. The expert testified that the Connecticut licenses were counterfeit.

The briefcase also contained a piece of white lined paper with copies of various forms of identification taped to the paper, including a Department of Navy identification form. Stacey's fingerprints appeared on the underneath side of the tape holding these Navy documents to the paper. There was a copy of a West Virginia birth certificate with the information sections deleted with liquid white-out. Finally, there were several manila file folders with the following labels: "Stacey," "Stacey WF," "Stacey's papers," and "recipes." Stacey's fingerprints were found on the "recipes" folder. Her fingerprints were also found on used and partially used rub-on letters. The evidence at trial indicated that at least one package of rub-on letters was from a company in Blaine, Washington. In a zipped pouch in the briefcase, there were two prescription bottles bearing the name "Stacey Bullette", an alias used by Stacey Pearce. At trial, the agent demonstrated the process of making a false identification by using rub-on letters, an eraser, a personal photograph of himself, scissors, and a laminating machine.

The defendants presented no evidence. They both made Rule 29 motions for judgment of acquittal, which the court denied. The jury began its deliberations and requested an additional instruction on the "in or affecting interstate commerce" element under 18 U.S.C. § 1028. After receiving the judge's instruction, the jury returned guilty verdicts as to each defendant. At sentencing, the district court adopted the pre-sentencing report's recommendation of a two point upward adjustment for "more than minimal planning" under § 2F1.1(b)(2) of the Sentencing Guidelines. Both defendants

were sentenced to twenty-four months imprisonment, and they filed timely appeals.

## II.

### A.

We review a district court's supplemental instructions for abuse of discretion. *United States v. Horton*, 921 F.2d 540, 546 (4th Cir.1990) *cert. denied*, 501 U.S. 1234, 111 S.Ct. 2860, 115 L.Ed.2d 1027 (1991). The defendants' primary argument is that the district court erred by failing to instruct the jury that the government was required to prove that the defendants were in possession of every document-making implement alleged in the indictment and that all of the implements met the interstate jurisdictional requirement of 18 U.S.C. § 1028(c)(3). Under the indictment, the defendants were charged with possessing the following document-making implements: "laminating materials, rub on lettering materials, laminating machine, photos with backdrops, blank driver's licenses from the States of Tennessee and Connecticut, and one partially completed State of Tennessee driver's license" in violation of 18 U.S.C. § 1028(a)(5) and § 1028(c)(3).

The language of the statute, as well as the legislative history, indicate that a minimal nexus between a document-making implement and interstate commerce is sufficient to constitute a violation of the statute. 18 U.S.C. § 1028(a)(5) provides:

Whoever, in a circumstance described in subsection (c) of this section . . . knowingly produces, transfers, or possesses a document-making implement with the intent such document-making implement will be used in the production of a false identification document or another document-making implement which will be so used . . . shall be punished. . . .

18 U.S.C. § 1028(c)(3) states: "The circumstances referred to in subsection (a) of this section is that . . . the production, transfer, or possession prohibited by this section is in or affects interstate or foreign commerce." The legislative history, relied upon by defendants, defines a document-making implement and provides examples of document-making implements:

A document-making implement ... means any implement or impression specially designed or primarily used for making an identification document ... or another document-making implement. An example of a document-making implement is a device specially designed or primarily used to produce a small photograph and assemble laminated identification cards. The term may also include any official seals or signatures, or text in a distinctive type face and layout ... [or] specialized paper or ink or other materials used in the production of an identification document.

H.R.Rep. No. 802, 97th Cong., 2d Sess. 1 (1982), *reprinted in,* 1982 U.S.C.C.A.N. 3519, 3530. The legislative history also reflects that Congress intended "to provide broad Federal jurisdiction over violations of this section" by requiring that only a "minimal nexus with interstate or foreign commerce be shown." *Id.* at 3532–33.

In *United States v. Gros,* 824 F.2d 1487, 1494–95 (6th Cir.1987), the district court, in a prosecution under 18 U.S.C. § 1028(a)(5), had given an instruction that defined the term "in or affects interstate commerce" as requiring only a "minimal nexus with interstate commerce." *Id.* at 1494. The district court further stated that the minimal nexus requirement was satisfied if the jury found that the defendant "had an intent to do acts which, if complete, would have affected interstate commerce." *Id.* at 1495. Although the defendant appealed as to another element of the jury instruction, the Sixth Circuit noted that the instruction as a whole was not erroneous. *Id.* at 1496.

■ The district court's jury instruction in this case closely resembles the instruction approved of in *Gros:*

If you find beyond a reasonable doubt that the document-making implements, or any one of them, or any component parts of them, were made outside the State of North Carolina and delivered here from another state or foreign country, then the element of "in interstate commerce" will have been satisfied. If you find beyond a reasonable doubt that the intended use of the document-making implements affect interstate commerce in an adverse manner,

then you may find that the element of "affect upon interstate commerce" has been satisfied.

Because under the plain language of the statute, the government only needs to prove that the defendants possessed a single document-making implement "in or affecting interstate commerce," we find that the district court did not err in its jury instruction. *See Wellington v. Daniels,* 717 F.2d 932, 938 (4th Cir.1983) (an error in jury instructions will only mandate reversal if the error is determined to have been prejudicial based upon a review of the record as a whole).

B.

■ The defendants also challenge the sufficiency of the evidence to support their convictions. The standard of review in evaluating the sufficiency of the evidence is whether any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *United States v. Giunta,* 925 F.2d 758, 764 (4th Cir.1991). The standard requires us "to construe the evidence in the light most favorable to the government, assuming its credibility, drawing all favorable inferences from it, and taking into account all the evidence, however adduced." *Id.* at 764 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

■ The government presented substantial evidence that David and Stacey Pearce's possession of the various document-making implements alleged in the indictment, including identification from Tennessee, New Jersey, and Connecticut, was "in or affecting interstate commerce." Additionally, the government established that several key pieces of evidence, including the laminating pouches from Mexico, the laminating machine from Korea, and at least one package of rub-on letters from Blaine, Washington had travelled through interstate commerce.

■ The record also indicates that both David and Stacey Pearce had constructive, if not actual, possession of the residence and the rental car in which the document-making implements were found. *See United States v. Blue,* 957 F.2d 106, 108 (4th Cir.1992)

(constructive possession can be established by evidence showing ownership, dominion, or control over the contraband itself or the premises or vehicle in which the contraband is concealed). David Pearce listed his residence on the car rental lease and gave the government agent written and verbal consent to search the residence. Stacey Pearce's fingerprints were on several document-making implements found in the car and residence, including a package of rub-on letters in the car, a package of rub-on letters on a clipboard beside the laminating machine, other packages of rub-on letters in the briefcase, and a piece of tape attached to an incomplete, counterfeit identification. The car lease also listed Stacey Pearce as the person to be contacted in an emergency and the address on the lease was the same as the address at which the document-making implements were found. Additionally, the residence contained a whole bedroom closet full of women's clothing, as well as two prescription bottles bearing a name of "Stacey Bullette,"—one of Stacey's aliases.

Therefore, in the light most favorable to the government, we conclude that a "rational trier of fact could have found the defendant[s] guilty beyond a reasonable doubt." *United States v. Madden,* 38 F.3d 747, 751 (4th Cir.1994). We, therefore, affirm both defendants' convictions.

### III.

The defendants also challenge the district court's enhancement of their sentence for more than minimal planning. Section 2F1.1(b)(2) of the Sentencing Guidelines states: "If the offense involved (a) more than minimal planning, or (b) a scheme to defraud more than one victim, increase by 2 levels." More than minimal planning is defined as "more planning than is typical for commission of the offense in a simple form." *See* U.S.S.G. § 1B1.1(f). The district court found

> there is more than minimal planning when [the defendants] have gathered together such things as laminating materials, lettering materials, a laminating machine, photo equipment with back drops, blank driver's license from the states of . . . Connecticut

and one other one, and partially completed driver's licenses.

We agree with the district court that the assembling of numerous and widely varied implements by the defendants involved more than minimal planning. The district court's determination, therefore, was not clearly erroneous. *See United States v. Daughtrey,* 874 F.2d 213, 218 (4th Cir.1989).

Accordingly, we affirm the convictions and sentences of David and Stacey Pearce.

*AFFIRMED.*