**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                      No. 95-5232

WALTER PATRICK MOORE,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
M. J. Garbis, District Judge.
(CR-94-257)

Submitted: February 27, 1996

Decided: March 20, 1996

Before HAMILTON and MOTZ, Circuit Judges, and CHAPMAN,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Paula M. Junghans, MARTIN, JUNGHANS, SNYDER & BERN-
STEIN, P.A., Baltimore, Maryland, for Appellant. Lynne A. Bat-
taglia, United States Attorney, Jamie M. Bennett, Assistant United
States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Walter Moore was convicted, after a jury trial, of possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1) (1988), and possession of crack cocaine with intent to distribute, 21 U.S.C. § 841(a)(1) (1988). On appeal he contends that evidence obtained during a search of his home should have been suppressed on the ground of coercion, and that the evidence was insufficient to support his convictions. Finding no error, we affirm.

I

Officers of the Howard County (Maryland) Police Department executed a valid search warrant at Moore's home on the evening of March 28, 1994. The officers broke down the front door of Moore's home and entered the living room, where Moore, his wife, and his eighteen-month old daughter were watching television. They handcuffed Moore and his wife, allowing his wife to hold the child on her lap.

According to the testimony of the police officers, Sergeant Coon secured the house and began a systematic search. Officers Ensko and Bender took Moore into the bathroom for questioning and advised him of his Miranda rights. Ensko informed him that his wife might also be arrested, depending on what they found during the search. Ensko further stated that if Moore told him where the drugs and weapons were, his wife would not be arrested that night, though she might be arrested later. Ensko said that if his wife was arrested, Moore's daughter might be placed in foster care, or the officers could call a family member to get her. In any event, though, Social Services would be notified that Moore's daughter was in a house where drugs were found, and Social Services would ultimately determine the fate of the child. Moore asked if the officers could call an uncle to come

2

and get his daughter, but the officers declined his request at that time. Ultimately, his wife was not arrested, and the daughter stayed with her.

During the questioning in the bathroom, Moore admitted to having one weapon, a 9 mm. Smith & Wesson handgun, in a hall closet. The officers brought Moore back into the living room, and one of them told Coon about the gun. Coon continued his search, and when he got to the closet he found the Smith & Wesson handgun and ammunition on the top shelf. When Moore saw that Coon had discovered the gun, Moore said that the gun did not belong to his wife. He said he got the gun from a friend, and admitted that he was on parole for a felony.

Ensko then searched Moore's van, where he found an aerosol can with a false bottom; the can contained forty-one grams of crack cocaine. Although Moore voluntarily turned over the keys, he did not tell the officers about the drugs in the van.*

As the search continued, Officer Bender found a .32 caliber JLG revolver hidden under a nightstand in the bedroom.

Moore was taken to the police station for booking and additional questioning. The officers gave Moore another Miranda warning, and he executed a written waiver. He then made a written statement admitting ownership of the guns found in his house, and an oral admission (but not a written statement) that the drugs found in his van were his. Bender said that he told Moore his wife had not been arrested.

The Moores' testimony varied somewhat from that of the officers. Moore testified that shortly after the officers broke down the living room door, they stated that they were searching for drugs, and if they found any they would arrest Mrs. Moore and put the child in foster care. The officers took him into the bathroom, and he asked if he could call someone to get his daughter; the officers refused. They began explaining what they were looking for without giving him any sort of Miranda warning. One of the officers in the living room called

_____

*Moore concedes that the search of the van was not improper.

3

up to the bathroom, saying that he had found bullets. Moore then told the officers where both of his guns were hidden.

The officers searched the van and found the drugs. They took Moore to the police station without telling him whether his wife was going to be arrested. After he was booked, he asked to call home to check on his wife and daughter, but the officers denied his request. He further testified that he wanted to call home to get his lawyer's telephone number, but the officers told him not to worry about calling a lawyer at that time.

The officers told Moore that if he did not want his wife to be arrested and his daughter taken away, he would have to make a statement about the guns. They read Moore a <u>Miranda</u> warning, and he signed a waiver form. Moore asked the officers what he needed to say in the statement, and said that he would write down whatever they wanted. He admitted, however, that the words on the statement were his own.

Mrs. Moore testified that after the officers restrained her husband, she asked several times if she or the officers could call a neighbor to get her daughter. The officers refused. They said that if they found contraband, both of the Moores would be arrested and their daughter would be placed in emergency care. She said Ensko told Moore that the search could be easy, or they could tear the place apart, and that Moore responded by admitting to the gun in the closet. The officers completed the search of the house and the van and took Moore to the police station. As they left, they told Mrs. Moore that she would not be arrested that night, and they left the child with her.

Moore moved to suppress the firearms, claiming that the officers coerced him into telling them where one of the guns was concealed, and coerced him into admitting the guns were his. The district judge denied the motion based on the testimony at the suppression hearing. After a jury trial, at which the Moores and the officers testified, Moore was convicted of possession of cocaine base with intent to distribute and possession of a firearm by a convicted felon. He timely appealed.

4

II

Moore contends that the district court erred in denying his suppression motion for two reasons. First, he claims that the officers coerced him into admitting the location of the concealed firearms by threatening to arrest his wife and have his daughter placed in foster care if he did not reveal the location of the weapons. He claims that without this coercion the officers might not have found the firearms. Second, he contends that the officers coerced him into admitting the guns were his--if not for this coercion, Moore claims, the jury might have believed the guns did not belong to him, and might not have convicted him.

The district court's findings of fact on a suppression hearing are reviewed for clear error. United States v. Rusher, 966 F.2d 868, 873 (4th Cir.), cert. denied, ___ U.S. ___, 61 U.S.L.W. 3285 (U.S. Oct. 13, 1992) (No. 92-5732). The decision to suppress is reviewed de novo. Rusher, 966 F.2d at 873. The threshold question is whether the disputed evidence was obtained as the result of illegal government conduct. New York v. Harris, 495 U.S. 14 (1990).

Moore does not deny that the officers had a valid warrant to search his home and van. In light of this concession, Moore's claim that the officers would not have found the guns but for his cooperation is specious. There is no reason to believe that the officers, executing a search warrant for weapons and drug paraphernalia, would not have conducted the search in a thorough, exhaustive manner. The guns were found in a closet and behind a nightstand, neither one a hiding place so clever as to have likely avoided detection. Even if Moore had not told the officers about the location of the guns, the officers would not have acted improperly in executing the search warrant by looking in the closet and behind the nightstand because the objects they sought could easily have been concealed in those places. See Pachaly v. City of Lynchburg, 897 F.2d 723, 726 (4th Cir. 1990). Further, although the officers' badgering of Moore was far from admirable, it cannot be said that the officers would not have found the firearms but for their coercion. See Young v. Maryland, 455 F.2d 679 (4th Cir.), 407 U.S. 915 (1972).

Second, Moore's contention that the officers coerced him into admitting ownership of the firearms is also without merit. A confes-

5

sion is involuntary if given in circumstances suggesting that the defendant's will has been overborne and that his "capacity for self-determination [was] critically impaired." Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973). If the totality of the circumstances demonstrate that a confession was coerced by threats or promises, the confession is involuntary. Arizona v. Fulminante, 499 U.S. 279 (1991). The voluntariness of a confession must be established by a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477 (1972).

Moore relies heavily on United States v. Tingle, 658 F.2d 1332 (9th Cir. 1981), to support his claim that the officers coerced him to admit ownership of the guns. In Tingle, the Ninth Circuit found involuntary a confession that was induced by statements to the defendant that she faced a long sentence and would not see her daughter for "a while" if she did not cooperate. 658 F.2d at 1334. The interrogation lasted an hour; the defendant began visibly shaking and sobbing, and eventually confessed to participating in a robbery. The officers' statements were, according to the Ninth Circuit, "patently coercive." 658 F.2d at 1336.

Moore also relies on Ferguson v. Boyd, 566 F.2d 873 (4th Cir. 1977), in which this court found a confession involuntary because the defendant's girlfriend was held on "shaky ground," apart from her small children, for an extended period of time in an effort to obtain the defendant's cooperation. The court noted, however, that "a confession is not per se invalid merely because the confessor implicates himself in an effort to secure the best possible disposition of a charge pending against a relative or friend." 566 F.2d at 878 n.7.

The case at bar, although similar to Tingle and Ferguson, is distinguishable in several important respects. First, unlike the situation in Ferguson, Moore's wife was never arrested or detained, other than the brief period during which she was handcuffed in the home. Second, unlike the facts in Tingle, the officers here did not threaten Moore with a long term of imprisonment during which he would not be able to see his daughter; rather, the officers suggested that they might have to place the daughter in foster care until the situation was resolved. As the district court correctly found, the officers were simply informing Moore of the natural consequences of his illegal acts. Their methods were certainly harsh; however, we find that their actions were not

6

so extreme as to overcome Moore's will. Therefore, we affirm the district court's denial of Moore's motion to suppress.

III

Moore also claims that the evidence was insufficient to support his convictions. In reviewing the sufficiency of the evidence, this court looks to whether, viewing the facts in the light most favorable to the government, any rational jury could have found the defendant guilty. United States v. Tresvant, 677 F.2d 1018 (4th Cir. 1982). This court reviews both direct and circumstantial evidence, and permits the government the benefit of all inferences that may reasonably be drawn from the facts proved to those sought to be established. Id. Further, the credibility of the witnesses is within the sole province of the jury, and the jury's determination in this regard is not reviewable. United States v. Saunders, 886 F.2d 56 (4th Cir. 1989).

The evidence in this case was more than sufficient to support the jury's verdict on the firearm count. The elements of the offense are (1) possession, (2) by a convicted felon, (3) of a firearm, (4) in or affecting interstate commerce. 18 U.S.C. § 922(g)(1). Moore does not deny that he was a convicted felon, or that the firearms travelled in interstate commerce. His only claim is that the guns found in the house belonged to his wife, so he did not possess them. However, Moore admitted to Bender at the police station that the firearms were his. The jury had before it Moore's contradictory testimony and his sworn statement admitting ownership of the firearms. The jury's determination regarding which evidence to believe should not be disturbed on appeal. Saunders, 886 F.2d at 60. When viewed in the light most favorable to the Government, the evidence was sufficient to support the jury's verdict. Tresvant, 677 F.2d at 1021.

Further, the evidence supports the conviction for possession of cocaine base with intent to distribute, 21 U.S.C.§ 841(a)(1). Moore's constructive possession of the drugs is established by their presence in his van. See United States v. Pearce, 65 F.3d 22, 25-26 (4th Cir. 1995); United States v. Hernandez-Palacios, 838 F.2d 1346, 1349 (5th Cir. 1988). Further, the quantity of drugs--forty-one grams of cocaine base--supports a finding of intent to distribute. See United States v. Nelson, 6 F.3d 1049, 1053 (4th Cir. 1993) (intent to distrib-

7

ute may be inferred from possession of amount of drugs inconsistent with personal use), cert. denied, ___ U.S. ___, 62 U.S.L.W. 3792 (U.S. May 31. 1994) (No. 93-8210); United States v. Fisher, 912 F.2d 728, 730 (4th Cir. 1990) (same), cert. denied , 500 U.S. 919 (1991). The jury was entitled to discredit Moore's testimony that he did not know the drugs were in the van; that credibility determination is not reviewable. Saunders, 886 F.2d at 60. The remaining evidence, when viewed in the light most favorable to the Government, supports the jury's verdict on the charge of drug possession with intent to distribute. Because the evidence was sufficient to support the jury's verdict, we affirm Moore's conviction.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED