UNITED STATES of America,
Plaintiff,

v.

Javier PONCE MUNOZ, Jose Oscar Fernandez, and Jesus Cervando Arreola–Perez, Defendants.

No. 01–40010–01–02–03–SAC.

United States District Court,
D. Kansas.

June 19, 2001.

---

James A. Brown, Office of the U.S. Attorney, Topeka, KS, for Plaintiff.

Jerold E. Berger, Topeka, KS, Aldo P. Caller, Kansas City, MO, F.G. Manzanares, Topeka, KS, Mark J. Sachse, Kansas City, KS, for Defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

This case is before the court on numerous motions, including discovery motions and a motion to suppress. An evidentiary hearing was held on Friday, June 1, 2001.

Several of the pending motions relate to discovery matters. These are: defendant Ponce Munoz's Motion for Disclosure of Promises or Agreements (Dk.54); defendant Ponce Munoz's motion for disclosure of bad acts or criminal conduct (Dk.55); defendant Arreola–Perez's motion for disclosure of Rule 404(b) evidence (Dk.33); defendant Arreola–Perez's motion for discovery (Dk.30); defendant Arreola–Perez's motion for inspection of tangible evidence (Dk.35); and defendant Arreola–Perez's motion to compel disclosure of promises of preferential treatment, etc., (Dk.31). In its responses, (Dk. 62 and 45), the government states that it does not contest the discovery motions, and has agreed to produce, or has already produced, the discovery requested by all defendants in the above motions. Accordingly, based upon the government's representations, all the above motions will be denied as moot.

The remaining motions are addressed below.

## I. Defendant Fernandez's Motion to Suppress Evidence (Dk.53).

Defendant alleges that his consent to search, his confession, and his waiver of Miranda rights were coerced by the statements of law enforcement officers, and that all evidence found as a result thereof should be suppressed.

The facts relative to this motion are not in dispute. On May 9, 2000, Officer Brian Hill, and several other officers of the Topeka Police Department were assisting FBI Task Force Officer Hunderfund in following a target suspect known as Javier Munoz. The FBI had been gathering intelligence on Munoz, who was suspected of drug trafficking. The officers followed Munoz to the Food–4–Less on East 6th where he met with an Hispanic male in a white Dodge Ram pick-up. Several officers followed the pick-up to the defendant's residence at 1107 SE Seward, while officer Hill followed the vehicle driven by Munoz to 801 SE Highland.

Officer Hill testified that at the time of their observation, he had a great deal of knowledge about both of these addresses regarding drug activity. Officer Hill also testified that the Topeka Police Department had been gathering intelligence on Munoz as well, and that they had information that Munoz came to Topeka only when bringing large quantities of cocaine and methamphetamine.

The investigating officers then decided to conduct "knock and talks" at these and one other address believed to be associated with the suspected drug related activities of Munoz. The officers conducted the initial knock and talk at 801 SE Highland where they were given consent to search, but found no evidence of a crime. The officers conducted a second knock and talk

at 312 SE Lime where they were also given consent to search, but found no evidence of a crime.

Immediately following the second knock and talk, police officers, led by officer Hill, conducted a knock and talk at defendant's residence, 1107 SE Seward. By this time it was approximately 12:00 a.m., on May 10, 2000. Officer Hill approached defendant's home with only one other officer, officer Soto, who was able to communicate in Spanish with the defendant. Three other officers were present, but out of sight. Officer Hill was dressed in jeans, a black T-shirt, and a Topeka Police Department duty vest, and officer Soto was dressed in a similar manner.

When officers Hill and Soto knocked on the door at 1107 SE Seward, the defendant answered and the officers immediately engaged him in conversation. Officer Soto requested the defendant's consent to search his residence, and informed the defendant that the officers had received some drug complaints involving his house. Defendant gave his consent to the search. Upon receiving the defendant's consent, officers Hill and Soto informed the defendant that three other officers would be summoned to conduct the search while Hill and Soto continued to interview him.

The officers were able to communicate with the defendant in English and he usually appeared to understand, but when he appeared not to understand, officer Soto would repeat statements in Spanish. The defendant's wife and young child were present during the interview. When asked if there was anyone else present, the defendant replied in the negative. When asked if there were any drugs or money in the house, the defendant hesitated. The officers informed defendant that they knew that he had not been home all night, that they had been following him, and that they knew of his encounter with Munoz at the Food–4–Less parking lot.

The defendant then responded by informing the officers that there were several thousand dollars under the bed that were for an unnamed individual in Mexico.

Suspicious that the defendant would be holding money for an individual in Mexico whose name he did not know, the officers continued to inquire. They explained that they were investigating a drug organization which referred to itself as the Mexican Mafia, and that they knew that defendant's wife's sisters were "dating" drug dealers. Officer Hill also informed the defendant that if they were to find drugs in common areas of the house that both he and his wife would be arrested and that the defendant's child would be taken to the intake facility of SRS. The defendant responded by informing the officers that there were some drugs in the closet.

Officer Hill testified that the defendant was stopped in mid-sentence and was Mirandized in both English and Spanish. The defendant advised that he understood his rights, however, at that point the officers felt as if they had no reason to take the defendant into custody and were merely advising the defendant of his rights. Once the drugs were located where the defendant said they were, the officers inquired whether the defendant wished to cooperate. Officer Hill told the defendant that he suspected him of selling drugs for Munoz and that he wanted defendant's cooperation so that they could arrest Munoz.

Officer Hill further explained to the defendant that they now had probable cause to arrest both the defendant and his wife because: 1) the defendant admitted that it was he who had met with Munoz at the Food–4–Less parking lot; 2) the drugs had been located in a common area of the residence; 3) they had previous complaints about drug activity at that address; 4) they knew defendant's wife's sisters were involved with drug dealers; and 5) their

informants had purchased drugs from said drug dealers and women were present at some of those purchases.

Defendant then asked what would happen to his child if he and his wife were arrested. Officer Hill informed him of their unit's policy that any children in this situation are to be taken to an SRS intake facility until a determination is made as to which family relative may take custody of the child. The defendant continued to cooperate with the officers and began to describe his involvement with Munoz.

The defendant was then taken to the police station where he was again Mirandized and the inquiry continued. Officer Hill testified that at no time during the encounter with the defendant did the officers use a threatening tone with the defendant, physically touch the defendant or threaten him with physical punishment, draw their service weapons, or subject to the defendant to intimidating or prolonged questioning. Additionally, the defendant did not appear to be of limited intelligence, incoherent or intoxicated by any substance. Officer Hill also testified that when the defendant appeared to not understand something he was being asked or told, officer Soto would explain in Spanish. Officer Hill further testified that the defendant appeared to be scared and told the officers that he was nervous about disclosing information about Munoz.

Officer Hill testified that no promises were made to the defendant and that he merely told the defendant that due to his cooperation he would write a very favorable report and would inform the prosecutors that he had cooperated.

**Propriety of the "Knock And Talk" and Consent to Enter and Search Defendant's Residence**

■ The defendant is Spanish speaking and contends that he does not understand the American criminal justice system and his right to refuse consent to the officers

when they arrived at defendant's residence in the middle of the night to conduct a "knock and talk." The evidence showed, however, that a Spanish speaking officer was present to explain anything that the defendant did not understand. The government asserts that the defendant willingly agreed to their request to search his residence, and that the encounter was consensual.

■ Officer Hill testified that he and a fellow officer employed a knock and talk procedure. "Courts have defined this tactic as 'a noncustodial procedure [in which] the officer identifies himself and asks to talk to the home occupant and then eventually requests permission to search the residence.'" *United States v. Hardeman,* 36 F.Supp.2d 770, 777 (E.D.Mich.1999) (citation omitted). Courts generally have upheld this investigative procedure as a legitimate effort "to obtain a suspect's consent to search." *Id.* "Courts may consider the use of the 'knock and talk' procedure as one of the circumstances in evaluating whether consent was given and, if so, whether consent was given voluntarily." *Id.* (citing *United States v. Miller,* 933 F.Supp. 501, 505 (M.D.N.C.1996) and *United States v. Tobin,* 923 F.2d 1506, 1509 (11th Cir.), *cert denied,* 502 U.S. 907, 112 S.Ct. 299, 116 L.Ed.2d 243(1991)).

In *Davis v. United States,* 327 F.2d 301, 303 (9th Cir.1964), the Ninth Circuit noted:

Absent express orders from the person in possession against any possible trespass, there is no rule of public or private conduct which makes it illegal per se, or a condemned invasion of the person's right to privacy, for anyone openly and peaceably, at high noon, to walk up the front steps and knock on the front door of a man's "castle" with the honest intent for asking questions of the occupant thereof-whether the questioner be a

pollster, a salesman, or an officer of the law.

Federal courts have recognized the "knock and talk" strategy as a reasonable investigative tool when officers seek to gain an occupant's consent to search or when officers reasonably suspect criminal activity. *See United States v. Tobin,* 923 F.2d 1506, 1511 (11th Cir.) ("Reasonable suspicion cannot justify the warrantless search of a house, but it can justify the agents' approaching the house to question the occupants."), *cert. denied,* 502 U.S. 907, 112 S.Ct. 299, 116 L.Ed.2d 243(1991); *United States v. Hardeman,* 36 F.Supp.2d 770, 777 (E.D.Mich.1999) (discussing the "knock and talk" procedure to obtain a suspect's consent to search).

 A knock and talk is ordinarily consensual unless coercive circumstances such as unreasonable persistence by the officers turns the encounter into an investigatory stop. *United States v. Jerez,* 108 F.3d 684, 691–92 (7th Cir.1997). The court recognizes that other factors, such as a display of weapons, physical intimidation or threats by the police, multiple police officers questioning the individual, or an unusual place or time for questioning may transform a consensual encounter between a citizen and a police officer into a seizure. *See United States v. Maragh,* 894 F.2d 415, 418 (D.C.Cir.1990); *United States v. Baskin,* 886 F.2d 383, 386–87 (D.C.Cir. 1989), *cert. denied,* 494 U.S. 1089, 110 S.Ct. 1831, 108 L.Ed.2d 960 (1990); *United States v. Carrasquillo,* 877 F.2d 73, 76 (D.C.Cir.1989); *United States v. Lloyd,* 868 F.2d 447, 450 (D.C.Cir.1989).

Here, the sole factor weighing in defendant's favor is the time of the questioning. Admittedly, it was not at high noon, but at midnight or soon thereafter. There was no testimony, however, regarding the effect the lateness of the hour had on the defendant. Instead, officers testified that the defendant had not been home earlier in the evening. The court cannot conclude that the defendant was abruptly awakened from his sleep by a rapping at his door, or that the circumstances were coercive enough to change the nature of the initial encounter from a consensual one to either an investigatory seizure or a custodial interrogation.

**Custodial Interrogation Without *Miranda* Warnings**

 The defendant next contends that he was subjected to custodial interrogation without receiving *Miranda* warnings. Defendant's argument focuses upon the facts that when the officers entered defendant's residence to interview him and conduct a search, he was a suspect in an ongoing investigation, five officers were present, the inquiry and search were conducted around midnight, the officers had guns on their persons, and the interrogation lasted approximately twenty minutes. The defendant further contends that he was immediately placed in a custodial setting requiring *Miranda* warnings, or in the alternative, that *Miranda* warnings were required when the officers found the money in his residence. The government contends that a custodial situation requiring *Miranda* warnings was not created until after they found drugs in defendant's closet and thus had probable cause to arrest the defendant. The court agrees.

 A defendant is not necessarily in custody simply because he is a suspect. *United States v. Cruz,* 838 F.Supp. 535, 542 (D.Utah 1993), citing *Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); *United States v. Ellison,* 791 F.2d 821 (10th Cir.1986). A suspect is usually not in custody in his home when officers merely want to speak with him. *Id.* However, "custody" for Miranda purposes may occur in one's home if the suspect is subject to the functional equivalent of arrest. *See id.; see also Orozco v.*

*Texas,* 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311(1969).

■ The "ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983). That determination is made under the "totality of the circumstances" test. *United States v. Howard,* 115 F.3d 1151, 1154 (4th Cir.1997).

■ A person is "in custody" for the purposes of Miranda if he "has been deprived of his freedom of action in any significant way," *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), or his freedom of action has been curtailed to a "degree associated with a formal arrest," *Beheler,* 463 U.S. at 1125, 103 S.Ct. 3517. A show "of official authority such that a reasonable person would have believed he was not free to leave" indicates that an arrest has occurred. *Florida v. Royer,* 460 U.S. 491, 502, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion) (quoting *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). The subjective intent of either the suspect or police is irrelevant to a Fourth Amendment analysis of whether a suspect is in custody. *United States v. Sanchez,* 89 F.3d 715 (10th Cir.1996); *United States v. Griffin,* 7 F.3d 1512, 1519 (10th Cir.1993).

The defendant opened the door to two officers and allowed three others into his home to search while two officers conversed with him about complaints they had previously received involving drug activity at the defendant's address. The evidence established that at no time during the encounter with the defendant did the officers use a threatening tone, physically touch the defendant, threaten physical punishment, draw their service weapons, or subject to the defendant to intimidating or prolonged questioning. Additionally, the defendant did not appear to be of limited intelligence, incoherent, or intoxicated by any substance. At all times, an officer was present and available to explain in Spanish any English the defendant did not understand. Although defendant likely may not have wished to leave his residence, he could easily have requested that the officers do so. Under the totality of the circumstances, the court finds that defendant's freedom of action was not curtailed in any significant way during the initial encounter.

■ Nor were *Miranda* warnings required when the officers found the money in defendant's residence. The fact that a person has several thousand dollars under a bed and is holding it for an unnamed individual in Mexico, although perhaps unusual, does not give the officers probable cause to believe that the defendant is violating any law of which the court is aware.

■ Given the totality of the circumstances, no custodial situation requiring *Miranda* warnings was created until the officers found drugs in defendant's closet and thus had probable cause to arrest him.

**Voluntariness of Confession**

Defendant next alleges that his confession was involuntary because of the officers' threat to arrest his wife and remove his child from their custody if they found drugs in the residence. The government contends that the officers' conversation regarding the potential arrest of defendant's wife and custody arrangements for the child merely conveyed correct and accurate information which allowed the defendant to make a rational choice.

■ In considering whether a confession or statement is of free will, the courts look to several factors, including: "(1) the characteristics of the defendant: age, edu-

cation, intelligence, and physical and emotional attributes; (2) the circumstances surrounding the statement, including the length of detention and questioning and the location of questioning; and (3) the tactics, if any, employed by officers. (Citations omitted). In no case, however, is any single factor determinative." *United States v. Chalan,* 812 F.2d 1302, 1307(10th Cir.1987), *cert. denied,* 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 565 (1988).

"[A] defendant's statement that is extracted or induced by threats or promises is involuntary." *United States v. Hernandez,* 93 F.3d 1493, 1503 (10th Cir. 1996) (citing *Hutto v. Ross,* 429 U.S. 28, 30, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976)). "Incriminating statements obtained by government acts, threats, or promises that permit the defendant's will to be overborne are coerced confessions running afoul of the Fifth Amendment...." *Griffin v. Strong,* 983 F.2d 1540, 1543 (10th Cir.1993) (quoting *United States v. Short,* 947 F.2d 1445, 1449 (10th Cir.1991), *cert. denied,* 503 U.S. 989, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992)). "Coercion may involve psychological threats as well as physical threats." *United States v. Finch,* 998 F.2d 349, 356 (6th Cir.1993).

Unfounded "threats to arrest members of a suspect's family may cause a confession to be involuntary." *Id.* (citing *Rogers v. Richmond,* 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760,(1961)); *see Lynumn v. Illinois,* 372 U.S. 528, 534, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963) (while encircled by three police officers in her apartment and a twice convicted felon who purportedly "set her up," threats to a defendant mother, unsophisticated in criminal law, that state financial aid to her infant children would be cut off and her children taken from her if she failed to cooperate rendered her confession involuntary). However, merely exhorting the defendant to start telling the truth does not render his confession involuntary. *United States v. Bailey,* 979 F.Supp. 1315, 1318 (D.Kan. 1997); *see Chalan,* 812 F.2d at 1307 (defendant's confession was voluntary despite law enforcement officer's exhortations to tell the truth); *United States v. Morgan,* 911 F.Supp. 1340, 1350 (D.Kan.1995) (mere exhortations by law enforcement officers to tell the truth are not sufficient to render a defendant's statements involuntary). Informing a defendant that he and his wife could go to jail and that other arrangements would have to be made for the care of their child if the defendant did not cooperate does not render his confession involuntary when these events are merely consequences of defendant's illegal acts. *See United States v. Moore,* 1996 WL 121714, 79 F.3d 1142 (4th Cir.1996).

The crucial question in each case is whether the defendant's will was overborne at the time of the confession. *See Lynumn,* 372 U.S. at 534, 83 S.Ct. 917. A confession "must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *Malloy v. Hogan,* 378 U.S. 1, 7, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). When law enforcement officers deliberately prey upon the [paternal] instinct and inculcate fear in a [father] that [he] will not see [his] child in order to elicit "cooperation," they can exert the improper influence proscribed in *Malloy. United States v. Tingle,* 658 F.2d 1332, 1336 (9th Cir.1981). However, a defendant's state of mind is not dispositive of whether that defendant's "will has been overborne and his capacity for self-determination critically impaired." *Schneckloth v, Bustamonte,* 412 U.S. 218, 225, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

The court finds that the officers' discussion of realistic penalties or results for cooperative and non-cooperative

defendants does not render the defendant's confession or waiver of Miranda rights involuntary or coercive.

Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that includes a confession. Isolated incidents of police deception, and *discussion of realistic penalties for cooperative and non-cooperative defendants, are normally insufficient to preclude free choice.* United States v. Jones, 32 F.3d 1512, 1517 (11th Cir.1994). (Emphasis added).

The officers' statement pointed out the desirability of cooperation, did not misrepresent the government's intention or purpose, and accurately explained to the defendant their good faith basis for finding probable cause to arrest the defendant's wife. Therefore, no undue psychological pressure was imposed on the defendant by the officers' comments, and his confession was neither coerced nor involuntary.

**Waiver of *Miranda* Warnings**

Defendant additionally contends that factors including the officers' statements regarding his wife and child render his waiver of *Miranda* rights involuntary.

 A suspect who has been informed of his *Miranda* rights "may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602. The government bears the burden of proving by a preponderance of the evidence that the defendant's waiver of rights was voluntary. *United States v. Toro–Pelaez*, 107 F.3d 819, 825 (10th Cir.), *cert. denied*, 522 U.S. 845, 118 S.Ct. 129, 139 L.Ed.2d 78 (1997); *Colorado v. Connelly*, 479 U.S. 157, 168–69, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

 To prove a voluntary waiver of Fifth Amendment rights, the government

must establish: (1) that the waiver was the product of free and deliberate choice rather than intimidation, coercion, or deception; and (2) that the waiver was made in full awareness of the nature of the right being waived and the consequences of waiving. *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). Only if the totality of the circumstances surrounding the interrogation shows both an uncoerced choice and the requisite level of comprehension can a waiver be effective. *Id.; Hernandez*, 93 F.3d at 1501.

For the same reasons that the court found defendant's confession to be voluntary, the court finds that the government has met its burden to prove that the defendant's waiver of his Miranda and Fifth Amendment rights was voluntary. Accordingly, defendant's motion to suppress will be denied.

## II. Defendant Arreola–Perez's Motion to Join (Dk.36).

This defendant seeks to join in all other motions filed by the other defendants which may benefit him. The motion was timely filed, and the government has no objection. This motion will be granted.

## III. Arreola–Perez's Motion for Bill of Particulars (Dk.29).

 Defendant Arreola–Perez seeks a bill of particulars specifying the nature of the alleged conspiracy, the specific acts constituting the conspiracy, the manner in which the conspiracy was carried out, the facts constituting the overt acts, the names of co-conspirators, and other similar information. Defendant has cited no authority in support of his motion, and makes no allegation other than that the "information is necessary for him and his counsel to have in order to prepare an adequate defense to the charges now pending against him." (Dk.29, p. 1).

The decision to grant a bill of particulars lies within the discretion of the court. *United States v. Sturmoski,* 971 F.2d 452, 460 (10th Cir.1992). " 'The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense. . . .' " *United States v. Dunn,* 841 F.2d 1026, 1029 (10th Cir.1988) (quoting *United States v. Cole,* 755 F.2d 748, 760 (11th Cir.1985)). An indictment is sufficient if it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States,* 418 U.S. 87, 117–118, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

A bill of particulars may serve to "amplify the indictment by providing additional information," but it is not a discovery device. *United States v. Johnson,* 575 F.2d 1347, 1356 (5th Cir.1978), *cert denied,* 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979). It may not be used to compel the government to disclose evidentiary details or explain the legal theories upon which it intends to rely at trial. *United States v. Gabriel,* 715 F.2d 1447, 1449 (10th Cir.1983)(affirming denial of bill of particulars where the Government had fully disclosed all the documentary and physical evidence it intended to produce at trial, and relied upon alternative theories of defendant's participation).

The defendant has the burden of showing that failure to grant the request would result in prejudicial surprise, would preclude an opportunity for meaningful defense preparation, or would cause double jeopardy problems, unless the matter is clear on the face of the defendant's request. *United States v. Anderson,* 31 F.Supp.2d 933, 938 (D.Kan.1998). *See United States v. Barbieri,* 614 F.2d 715, 719 (10th Cir.1980).

In this case, the indictment contains the essential elements of the offense charged and fairly informs the defendant of the charges against which he must defend. Additionally, the government has asserted that "all of the items [defendant] requests in his Motion for Bill of Particulars are contained in the discovery," and that it "knows of no supplemental or additional information that it has not already provided or agreed to provide in the future." (Dk.45, p. 14.) A bill of particulars is not required where, as here, information necessary for one's defense can be obtained through some other satisfactory form. *See United States v. Canino,* 949 F.2d 928, 949 (7th Cir.1991), *cert. denied,* 504 U.S. 910, 112 S.Ct. 1940, 118 L.Ed.2d 546 (1992). Accordingly, the defendant has not met his burden to show that failure to grant his request would result in prejudicial surprise, would preclude an opportunity for meaningful defense preparation, or would cause double jeopardy problems. The motion for a bill of particulars will therefore be denied.

## IV. Defendant Ponce Munoz's Motion for Production of Impeachment Evidence Regarding Government Witnesses (Dk.56).

By this motion, defendant Ponce Munoz seeks production of "all impeachable convictions of witnesses to be called by the government at the trial of the defendant . . ." Defendant cited no authority in his brief in support of his request, but at oral argument contended that *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), entitle him to such impeachment evidence where a witness's prior convictions are known.

The government has responded that it does not object to this motion, "but agrees

only to provide evidence of convictions relating to dishonesty or false statement." (Dk.62, p. 22). At oral argument, however, the government asserted that its policy is to turn over all prior convictions within the ambit of Fed.R.Evid. 609.

The court considers defendant's request for "all impeachable convictions" to be a request for disclosure of all convictions encompassed within Fed.R.Evid. 609. That rule provides that defendant is entitled to more than the government has agreed to produce. Fed.R.Evid. 609(a) states that for the purpose of attacking the credibility of a witness, felony convictions as well as convictions relating to dishonesty or false statement are admissible, subject to certain exceptions and conditions. The government has not agreed to produce evidence of prior felony convictions for its witnesses.

 Prior felony convictions of a government witness are items which are considered to be favorable or useful to the defense. *See United States v. Muse,* 708 F.2d 513, 516 (10th Cir.1983). The standard for determining whether there has been a violation of *Brady* is whether the undisclosed evidence was material, that is whether there is a reasonable probability—a probability sufficient to undermine confidence in the outcome—that had the evidence been disclosed to the defense, the result of the trial would have been different. *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *see United States v. Buchanan,* 891 F.2d 1436 (10th Cir.), *cert. denied,* 494 U.S. 1088, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990). A defendant's Fifth Amendment due process rights are violated when the government fails to disclose a witness's felony conviction record, in violation of *Brady. See United States v. Harpster,* 1993 WL 62054 (D.Kan. Feb. 2, 1993).

Whether the government's failure to disclose prior felony convictions of its witnesses is a mere oversight or is an intentional omission remains unclear. Defendant's motion for all impeachable convictions will be granted to the extent that the government will be required to produce not only evidence of convictions relating to dishonesty or false statement, but also evidence of prior felony convictions for those witnesses it intends to call at trial.

## V. Defendant Arreola–Perez's Motion to Sever (Dk.39).

 Defendant Arreola–Perez contends that severance is warranted because he will be prejudiced by the spill-over effect of a joint trial, and the jury will be unable to compartmentalize the evidence against the three defendants. He does not contend that any co-defendant made any statement that would inculpate or exculpate him, or that any *Bruton* problem exists. *See Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The government responds that this is a simple case, involving acts on three dates by three defendants, such that the jury should easily be able to compartmentalize the evidence against the defendants.

 "[T]he decision whether to sever counts of an indictment for separate trial is a matter committed to the sound discretion of the trial court." *United States v. Wiseman,* 172 F.3d 1196, 1211 (10th Cir.), *cert. denied,* 528 U.S. 889, 120 S.Ct. 211, 145 L.Ed.2d 177 (1999). "To establish abuse of discretion, defendant must show that actual prejudice resulted from the denial." *United States v. Powell,* 982 F.2d 1422, 1432 (10th Cir.1992) (quotation omitted). "Neither a mere allegation that defendant would have a better chance of acquittal in a separate trial, nor a complaint of the 'spillover effect' ... is sufficient to warrant severance." *Id.*

(quotation omitted). *See United States v. Hardwell,* 80 F.3d 1471, 1486–87 (10th Cir.1996) (upholding a denial of severance where the evidence was sufficiently strong so that any spillover effect was not prejudicial).

In light of relative simplicity of the case and the resulting likelihood that the jury will be able to compartmentalize the evidence as to each of the three defendants, defendant Arreola–Perez's motion to sever will be denied.

## VI. Defendant Ponce Munoz's Motion to Sever (Dk.57).

Defendant Ponce Munoz contends in this motion that defendant Fernandez made a statement while in custody that Fernandez had obtained drugs from defendant Ponce Munoz, raising *Bruton* problems. Although this statement against interest may be admissible against Fernandez, it is hearsay as to these co-defendants, as Fernandez cannot be required to waive his Fifth Amendment privilege and be cross-examined by defendant Ponce Munoz. The government agrees that "defendant Fernandez's statements certainly incriminate defendant Munoz, and said statements undeniably pose *Bruton* problems," warranting severance of this defendant from defendant Fernandez.

In *Bruton,* the Supreme Court held that a defendant is deprived of his rights under the Confrontation Clause when a co-defendant's confession which incriminates both defendants is introduced at their joint trial, even if the jury is instructed to consider that confession only against the non-testifying co-defendant. *See Richardson v. Marsh,* 481 U.S. 200, 206, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." The right of confrontation includes the right to cross-examine witnesses. "Therefore, where two defendants are tried jointly, the pretrial confession of one cannot be admitted against the other unless the confessing defendant takes the stand." *Id.*

"*Bruton,* . . ., does not hold that defendants in joint trials involving *Bruton* problems are entitled to separate trial." *United States v. Hill,* 901 F.2d 880, 883 (10th Cir.1990). Although *Bruton* problems are avoided by severance, severance is not required. *Id.; see United States v. Ridley,* 814 F.Supp. 992, 1000–1001 (D.Kan.1993) (severance is not compelled when a potential *Bruton* problem exists). "Severance is required 'only where admission of the statement in its edited form distorts the meaning of the statement or excludes information substantially exculpatory of the declarant.'" *United States v. Comeaux,* 955 F.2d 586, 590 (8th Cir.) (quoting *United States v. Long,* 900 F.2d 1270, 1279 (8th Cir.1990)), *cert. denied,* 506 U.S. 845, 113 S.Ct. 135, 121 L.Ed.2d 89 (1992).

The court finds that *Bruton* problems exist, but believes that this motion could be mooted by future plea negotiations. Therefore, the court will take this motion under advisement.

IT IS THEREFORE ORDERED that the following motions are denied as moot: Defendant Ponce Munoz's Motion for Disclosure of Promises or Agreements (Dk.54); Defendant Ponce Munoz's Motion for Disclosure of Bad Acts or Criminal Conduct (Dk.55); Defendant Arreola–Perez's Motion for Disclosure of Rule 404(b) Evidence (Dk.33); Defendant Arreola–Perez's Motion for Discovery (Dk.30); Defendant Arreola–Perez's Motion for Inspection of Tangible Evidence (Dk.35); and Defendant Arreola–Perez's Motion to Compel Disclosure of Promises of Preferential Treatment, etc., (Dk.31).

IT IS FURTHER ORDERED that defendant Fernandez's Motion to Suppress Evidence (Dk.53) is denied; defendant Arreola–Perez's Motion for Bill of Particulars (Dk.29) is denied; defendant Arreola–Perez's Motion to Sever (Dk.39) is denied; defendant Ponce Munoz's Motion to Sever (Dk.57) is taken under advisement; defendant Arreola–Perez's Motion to Join (Dk.36) is granted; and defendant Ponce Munoz's Motion for Production of Impeachment Evidence Regarding Government Witnesses (Dk.56) is granted.